UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Charmaine Hibbert

Write the full name of each plaintiff.

23 CV 9589

(Include case number if one has been assigned)

-against-

Montefiore Medical Center

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes ☐ No

SECOND AMENDED

# EMPLOYMENT DISCRIMINATION COMPLAINT

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name |
|---|---|---|
| Charmaine | T | Hibbert |

Street Address: 128 Lorraine Avenue

| County, City | State | Zip Code |
|---|---|---|
| Mount Vernon | NY | 10553 |

| Telephone Number | Email Address (if available) |
|---|---|
| 347-996-8602 | c.lewin0202@gmail.com |

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Name: Montefiore Medical Center

Address where defendant may be served: 853 Longwood Ave

| County, City | State | Zip Code |
|---|---|---|
| Bronx | NY | 10469 |

Defendant 2:

Name

Address where defendant may be served

| County, City | State | Zip Code |
|---|---|---|
| | | |

Defendant 3:

Name

Address where defendant may be served

County, City | State | Zip Code

## II. PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Montefiore Medical Center

Name

853 Longwood Ave

Address

| | | |
|---|---|---|
| Bronx | NY | 10469 |
| County, City | State | Zip Code |

## III. CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒ race: Black

☒ color: Black

☐ religion:

☒ sex: Female

☐ national origin:

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: Black

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: ____________

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: ____________

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: ____________

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B. Other Claims**

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

____________

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☒ did not promote me
- ☒ did not accommodate my disability
- ☒ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☐ other (specify): ______________________________

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Please see attached for amended complaint.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? 11/15/2022

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice? 11/22/2022

When did you receive the Notice? ____________

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

See attached. Money damages for emotional, physical mental pain and suffering.

Money damages for medical debt from relying on Defendant's assurances

regarding insurance.

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.**

| | | |
|---|---|---|
| 4/17/2025 | | Charmaine Hibbert |
| Dated | | Plaintiff's Signature |
| Charmaine | | Hibbert |
| First Name | Middle Initial | Last Name |
| 128 Lorraine Ave | | |
| Street Address | | |
| Mount Vernon | NY | 10553 |
| County, City | State | Zip Code |
| 347-968-3554 | | C.Lewin0202@gmail.com |
| Telephone Number | | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes ☐ No

**If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.**

Amended Complaint

## I. **Introduction**

1. Plaintiff Charmaine Hibbert brings this action against Defendant Montefiore Medical Center, alleging discrimination on the basis of race and sex, hostile work environment, retaliation, and unjust enrichment under federal and New York state statutes.

2. Plaintiff is a black female, born in 1971.

3. Plaintiff lives at 128 Lorraine Avenue, Mount Vernon, NY 10553.

4. Defendant is a large healthcare corporation with several hospitals and offices in Westchester County, the lower Hudson Valley, and the Bronx. Defendant's headquarters are located at 111 East 210th Street, Bronx, NY 10467.

5. Plaintiff worked as a motor vehicle operator for Defendant from January 24, 2022, to February 7, 2023.

6. Plaintiff worked at Defendant's offices at 853 Longwood Ave, Bronx, NY 10469.

7. Plaintiff's job description was to transport patients, nurses, and files to appointments and home visits. The job description also included light housekeeping duties.

## II. **Constructive Demotion, Disparate Treatment, Retaliation**

8. Plaintiff's understanding is that she was the only female driver hired in 15 years by Defendant at this particular office. Plaintiff was informed of this by another employee in the nursing unit who had worked at the office for around 20 years and was familiar with all of the drivers, as well as by her supervisor, Randy Rodriguez.

9. Plaintiff was also one of the only female black employees at the office. There have only been 2 other black women hired in about 20 years by Defendant.

10. Plaintiff passed all driving exams for her job duties and passed her probationary period without incident around the end of March 2022.

11. Plaintiff was told by Joan Pierson, HR manager for defendant, that she would be receiving a raise after her probationary period was over, which she never received. Plaintiff inquired about her raise and complained to Ms. Pierson around April 2022 that she did not receive the promised raise.

12. In April 2022, Plaintiff noted that there was a paper passed around in-house regarding salary increases and bonuses, which she did not receive. Plaintiff inquired again about the bonuses and was informed again that she did not have enough experience to qualify for the raise and bonuses.

13. Plaintiff observed that many of the black employees were being passed over for promotions or did not receive a bonus.

14. Plaintiff also noted that there was also a social hierarchy based on color at the workplace. Many of the darker skin employees were placed in the back of the office. Lighter skin employees, including Latino and white employees, were given seats near the front of offices, and treated better by management. Plaintiff observed that this was true for all of the Defendant's offices in the Bronx.

15. Plaintiff inquired why she did not get a raise or bonus, and was told she was not there long enough, despite having passed the probation period and despite what she was told by Ms. Pierson at the time of hiring.

16. Plaintiff was given very minimal job assignments, even after passing the probationary period, and was instructed to sit in the hallway most days rather than transport patients or nurses as per her job description.

17. Plaintiff had over 10 years of prior driving experience for FedEx and the Post Office. Based on her background as a driver, Plaintiff found it very irregular to spend much, if not all, of the day sitting around.

18. In June 2022, Plaintiff requested a modified work schedule. Plaintiff asked Mr. Rodriguez for a part time schedule, two days off, or any other sort of accommodation. Plaintiff felt frustrated that she had to come in early, around 6AM, and then sit around and do nothing until 4PM. Mr. Rodriguez said he would not make any accommodations because she was being paid, but Plaintiff did not understand why she was being paid and then given no assignments.

19. Plaintiff repeatedly asked her supervisor, Randy Rodriguez, for more work and complained about the lack of work to Ms. Pierson at least 3 times in April 2022. Plaintiff continued to make complaints and request additional work related to her job description. Plaintiff complained every couple of weeks into around July 2022.

20. In April 2022, Plaintiff and Ms. Pierson discussed transferring to an office where she could get more work. Plaintiff also went in to talk to Ms. Pierson in June 2022 and Ms. Pierson said she would look into it and seemed agreeable to helping Plaintiff transfer.

21. Plaintiff noted in her complaints to Ms. Pierson that the other motor vehicle operators, all male, were all given driving assignments while she was forced to sit and wait.

22. This lack of work continued for several months. In August 2022, Mr. Rodriguez and Ms. Pierson explained to Plaintiff that the lack of work was due to COVID-19 and requested that she not quit. This was despite the fact that Plaintiff was hired during COVID-19, in January 2022, when Mr. Rodriguez and Ms. Pierson were aware of the work demand.

23. Plaintiff was informed by a senior employee that the hiring team, and specifically Ms. Pierson in HR, were being pressured by the director of the facility to hire a female driver in order to meet diversity goals.

24. Plaintiff had applied to work for Defendant for 8 years and believes she was finally hired because of the pressure from upper management. Plaintiff believes this is why Mr. Rodriguez and Ms. Pierson were not serious about giving her actual work as she was only hired to appease their bosses and as a diversity hire. One older woman, with a higher title, told her they had to hire you or a Latina driver, especially during COVID. Been there for 20 years

25. This made plaintiff feel tokenized, as Plaintiff observed that she was being paraded around to all of the different departments to show off that they the Defendant had finally hired a female driver.

26. Plaintiff did not observe anything being done about the disparate treatment after her complaints. Despite the alleged lack of work, all of the male drivers were given work assignments. This was not a universal lack of work but a lack of work for the Plaintiff, the only female driver. Plaintiff continued to sit around while her male coworkers were given work.

27. Plaintiff observed that while the male drivers were there for longer than her, many had violations or other incidents like minor car accidents. These male drivers they were still given work assignments over her, despite her clean record. Plaintiff believed the other drivers did not want to have a female doing their work, and they had more sway over the management, especially Mr. Rodriguez, because they were part of the perceived boys' club.

28. Plaintiff kept asking for more things, including helping with housekeeping of the patient rooms, as per her job description. Plaintiff was told by Ms. Pierson that she could not help with housekeeping of the offices because of HIPPA laws, even though this was never discussed before and was not enforced when she was supposed to be transporting patients and private medical files.

29. Around August 2022, Mr. Rodriguez's supervisor found Plaintiff in the hallway doing nothing and offered to find her more work doing inventory. Plaintiff thought she would give her work every day now. However, this lasted 2 days and then she was back to sitting in the hallway.

30. Plaintiff was eventually told by Mr. Rodriguez in mid-August 2022 that she would be receiving 2-weeks of training on building maintenance and janitorial work so that she could have something to do. This included being trained on the industrial cleaning machines for cleaning the hallway. Plaintiff felt that this was hard labor that caused her back pain, and she would not be making any more money by increasing her job responsibilities.

31. Plaintiff noted that none of the male drivers were being asked to train on building maintenance work, and felt she was being singled out.

32. Plaintiff objected to this because it was not included in her original job description as Plaintiff was hired as a driver. Mr. Rodriguez reassured plaintiff that she would only have to do building maintenance work if the maintenance crew was on vacation, and this was a way to fill her time.

33. However, near the end of August 2022, after completing the training, other male employees would make sexist comments like telling Plaintiff to "grab a mop," even when there was a full maintenance staff. This included Mr. Rodriguez's good friend, Jason Russo, a manager in the Finance department. Plaintiff complained to Mr. Rodriguez, but nothing was done. None of the male drivers were told to grab a mop, and Plaintiff was singled out.

34. Plaintiff complained to Ms. Pierson in HR in early September 2022 about this disparate treatment and being given assignments outside of her job description. Plaintiff felt that this was a form of constructive demotion because she was not being given the same opportunity for driving assignments as her male peers but was instead relegated to cleaning duties outside of her original job description.

35. Ms. Pierson told Plaintiff that the building maintenance duties were part of her work responsibilities now but promised that Plaintiff could be transferred somewhere that had more opportunities related to what plaintiff was hired for and wanted to be doing: driving. Pierson said she would work with Plaintiff and the union to make this happen.

36. Plaintiff also complained to her union representative, Treshaann Thompson, who escalated the matter to another union representative, Pansey Llewellyn.

37. In addition to the stress and feelings of inadequacy from only being assigned cleaning tasks, Plaintiff was experiencing shooting back pain, which was aggravated by the constant sitting in uncomfortable plastic chairs for extended periods of time. When she was given driving jobs, Plaintiff was on her feet more and only had to sit for a short period of time while driving. Plaintiff would get supplies, escort the nurses and patients, and help the nurses with their bags. Additionally, while driving, Plaintiff could use extra lumbar support cushions for the van. This was not available for the plastic chairs she was provided, and she was not given the same opportunity to move around when she was told to sit and wait for most of the day. Plaintiff did not expect this lack of movement when she was hired.

38. Plaintiff had specifically chosen this job because she was under the impression that she would get to work outside primarily and be on her feet.

39. Due to her significant back pain, and the potential need to have surgery, Plaintiff went on medical leave on September 9, 2022. Plaintiff visited several doctors for her pain before making this decision.

40. While on leave, Plaintiff filed an EEOC complaint in November of 2022 because of the conditions she was facing.

41. On December 5, 2022, Plaintiff was medically cleared to return to work. However, Plaintiff remained on leave while waiting for reassurances from Ms. Pierson that her work conditions would change or that she would be transferred. This was necessary due to the recommendation of Plaintiff's physician and the risk of reinjury.

42. Plaintiff's physician recommended that she not go back to work unless her working conditions change because there was a high risk of reinjury due to the constant sitting in the plastic chairs. Plaintiff's physician told her that he can't keep giving her injections for the shooting back pain, or else her bone density would be very thin, which could lead to a greater injury.

43. While on leave, Plaintiff had two phone calls on December 23, 2022, and January 11, 2023, with Ms. Llewellyn, Ms. Pierson, and Mr. Rodriguez. They discussed her complaints about the lack of work, the hostile conditions, and about her being assigned to maintenance work despite her original job description.

44. Ms. Pierson attempted to show Plaintiff a modified job description, which included maintenance work. Plaintiff objected that she was not made aware of this, and her original job description only noted "light housekeeping duties," since she was specifically hired as a motor vehicle operator, not for building maintenance work with heavy industrial equipment. Ms. Pierson told Plaintiff that she would have to do the cleaning and maintenance work and alleged that this was always part of her job duties. Plaintiff believes this was a lie.

45. Plaintiff felt that she was being demoted to a janitorial role because the male drivers were not comfortable with a female driver. When Plaintiff asked Mr. Rodriguez in August 2022 if this was her new role, he told her it was not, but there was no other work lined up for her. Plaintiff feels this was a quiet way of demoting her to cleaning duties that the male drivers did not want to, or were not asked, to do.

46. On the December 23, 2022, call with Ms. Llewellyn, Ms. Pierson, and Mr. Rodriguez, the Ms. Llewellyn stated that in her 20-plus years as a union representative, she had never heard of a motor vehicle operator having to mop and do maintenance in the office building.

47. The December call then became heated, with Ms. Pierson raising her voice at Plaintiff, and Plaintiff getting defensive and also raising her voice to advocate for her needs.

48. This was not the first-time a conversation with Ms. Pierson in HR had become hostile to Plaintiff. Plaintiff noted another incident around May 2022. In a meeting with Ms. Pierson and Mr. Rodriguez, Ms. Pierson started shouting at Plaintiff and pointing her hand in Plaintiff's face to the point that Plaintiff had to move her chair back to avoid

further reprimand. Ms. Pierson then realized what she was doing and apologized to Plaintiff and told her she did not mean to act so aggressively.

49. Plaintiff noted that after the December 23 call, Ms. Pierson and Mr. Rodriguez were no longer as willing to assist Plaintiff in resolving her issues regarding the lack of work. Prior to this call, Ms. Pierson had seemed more willing to help Plaintiff transfer and had promised Plaintiff that she would help her get transferred and would work with her union to make it happen. However, following the call and her complaint, Ms. Pierson became colder and told Plaintiff that she could not transfer because Plaintiff had not worked at the office for a year. On the December call, Mr. Rodriguez finally admitted that there was no work for her at other offices.

50. Plaintiff was told in April 2022 by Ms. Pierson that the 1-year rule would only apply for people transferring to a completely different position, such as her moving from driving to secretarial work. Plaintiff was told that because she was moving from one driving position to another, this rule would not apply. It was not until the December 2022 call that Plaintiff was informed that she would be barred from transferring.

51. Ms. Pierson of HR did not previously tell Plaintiff she would be prohibited from transferring due to the rule of needing one year of experience to transfer, and Plaintiff had relied on Ms. Pierson's assurances that she would make it work. Plaintiff believes that management was no longer working with Plaintiff because of the complaints that she had made.

52. With her continued lack of work despite her complains, and the promise of her being transferred now being taken away, Plaintiff felt that returning to work was not possible. Plaintiff felt that the lack of work made it difficult for Plaintiff to receive adequate job evaluations and experience, which were both tied to the bonuses employees received and which she was promised when she was hired.

53. Plaintiff did not want to return to the same conditions that led to her back pain. In February 2023, Plaintiff asked for assurances of a transfer or better working conditions but did not receive either. Plaintiff was told to return to work by February 6 but did not return to work and was terminated effective February 7, 2023.

54. When Plaintiff was terminated, she was told she would not receive unemployment benefits because her employer had alleged that she was discharged for misconduct. Plaintiff feels that Ms. Pierson purposely wanted to Plaintiff to be barred from unemployment benefits because of her complaint. Plaintiff was told that she was disqualified from receiving unemployment benefits effective February 7, 2023.

55. On appeal to the New York Unemployment Insurance Appeal Board, Administrative Law Judge ("ALJ") Alex Slichko found that Plaintiff's testimony and medical records regarding her risk of reinjury was credible. ALJ Slichko found that even though Plaintiff was terminated, she had voluntarily severed her employment because she chose not to return to work after she was cleared. However, ALJ Slichko found that Plaintiff severed

her employment for good cause because of the high risk of reinjury and thus overturned the previous ruling and reinstated her unemployment benefits.

**Health Insurance, Unjust Enrichment**

56. Around late March 2022, Plaintiff was told by her union representative, Ms. Thompson, and Ms. Pierson, that she was eligible for health insurance after she passed her probationary period. Plaintiff was told she could only have 1 insurance and was forced to terminate her personal insurance. Plaintiff was told she would now be receiving insurance through work.

57. Plaintiff ended her personal health insurance with these assurances around April 2022, but somehow, the union had got her social security number wrong when enrolling her and she was never given health insurance. This was not discovered until Plaintiff received notices about unpaid medical bills.

58. Plaintiff did not frequent the doctor until she went on medical leave in September 2022, when she visited several doctors due to the worsening back pain and injuries she sustained while working for Defendant.

59. In October or November of 2022, Plaintiff received a letter that her bill was not being paid and that she had no insurance for several months. Plaintiff did not realize she had no insurance until she received the medical bills.

60. Plaintiff called the union and Ms. Pierson when she received the medical bills and discovered that her social security number was incorrectly entered by the union.

61. Plaintiff tried having this error corrected. Ms. Pierson and the union promised Plaintiff this would be figured out and it has not been. This was not just the union, but also Ms. Pierson in HR for Defendant who were all supposed to fix the issue.

62. Plaintiff has many medical bills from her time at work and the back issues she developed and was left without insurance and in medical debt due to the assurances of Ms. Pierson that she would be receiving health insurance.

63. Plaintiff would have had insurance if she was not told to get rid of hers in March 2022.

64. Plaintiff applied for Emergency Medicaid in December 2022 in order to mitigate the damages.

65. Plaintiff is still in increasing medical debt, which she cannot afford, and her medical bills have been sent to collections.

HOSTILE WORK

66. From January 2022, when Plaintiff was hired, to September 2022, when Plaintiff went on leave, her male coworkers would make comments and harass Plaintiff, almost daily, about Plaintiff's gender and size.

67. Examples of the near daily harassment included telling Plaintiff that if she wanted to "be like us," as in the men, she would have to hold the door and carry heavy bags at the same time. This was not required for the job duties as Plaintiff was still able to carry some bags and this was more about the male drivers making Plaintiff feel weak because she was much smaller than the rest of them.

68. On another occasion around April 2022, a male driver slammed his van door while transporting a nurse with Plaintiff and told Plaintiff to get her weight up and carry more bags "like the rest of the men."

69. In one incident in April 2022, a male driver told Plaintiff to "be a dear and gas up the van," which had not been the Plaintiff's responsibility at the time since she was not the driver. This was a sexist comment based on Plaintiff being the only women, as the drivers did not speak down to any of the other male drivers or call them dear.

70. Plaintiff's coworkers, the male drivers, would specifically leave extra work for Plaintiff to clean up after. The last driver to park the van in the garage was supposed to sweep, restock on supplies, and get the nurses' bags ready for the next day. In one incident in April 2022, Plaintiff was off of work and a driver, Michael Goldston, left all of this prep work for Plaintiff to do the next day. When Plaintiff complained about it, the driver aggressively told her he did it because Plaintiff complains she has nothing to do. Plaintiff also believes she was being given the cleaning and organizing jobs rather than driving the vans because this was more accepted by the other drivers as a women's job. Plaintiff felt admonished because she kept asking for driving assignments, not more cleaning or inventory assignments.

71. Plaintiff complained about this incident to Mr. Rodriguez, and he asked her to please do Mr. Goldston's work this one time and he would talk to him. Mr. Rodriguez did not speak to any of the drivers about these incidents.

72. The incident of another driver confronting Plaintiff about her complaints led Plaintiff to believe that Rodriguez and HR were not keeping her complaints in confidence. Plaintiff felt betrayed about this.

73. Plaintiff complained to her manager, Mr. Rodriguez, nearly every week about the treatment she was being subject to by her male coworkers. He repeatedly said would rectify the situation.

74. Even though Mr. Rodriguez said that he would address the issue, it got worse. Plaintiff was not aware of Mr. Rodriguez ever talking to the male drivers about their treatment of her. Plaintiff feels that Mr. Rodriguez avoided speaking to the drivers in general.

75. Plaintiff observed that some of the male drivers were there for longer than Mr. Rodriguez, and that Mr. Rodriguez was uncomfortable telling them what to do and lacked authority, even though he was the supervisor. Plaintiff also noted that all the male drivers were friends and would slack off together and hang out in the garage. Mr. Rodriguez confided in Plaintiff about this. Plaintiff believes that this is why Mr. Rodriguez failed to improve the consistently sexist environment that Plaintiff was being subjected to.

76. In May or June 2020, Plaintiff was told about private information she had shared only with Mr. Rodriguez by one of the female nurses that the drivers would transport. Plaintiff had inquired about the protocol for transporting nurses, as she had noticed a male driver accompanying the nurses during home-visits rather than waiting at his post. The female nurse called Plaintiff a snitch and told her that Randy had told them that she had complained about the male driver riding with the nurses to other hospitals.

77. When Plaintiff explained that she had not complained but merely asked about the protocol, the female nurse grew sympathetic. The nurse explained to Plaintiff that Mr. Rodriguez had shared private complaints with the employees before, and that this is "how he operates." Plaintiff feels that this created a toxic work environment, and that Mr. Rodriguez did this on purpose to alienate Plaintiff from the other female employees.

78. Plaintiff complained to Mr. Rodriguez the following day and his face became red, but he did not deny what happened. Plaintiff asked Mr. Rodriguez why he was trying to pit the other women in the office against Plaintiff.

79. Plaintiff complained about the hostile conditions to Ms. Pierson in HR many times. Ms. Pierson told Plaintiff in April 2022 that she knows about the sexism and boys' club in the garage and said that "us women have to stick together."

80. Ms. Pierson also told Plaintiff in April 2022 that she needs to "grow a thicker skin."

81. After Plaintiff's complaints to Ms. Pierson and Mr. Rodriguez about her treatment by the male coworkers, nothing was done. This is despite Ms. Pierson knowing about the sexist environment in the garage and their reassurances that something would be done.

**Relief**

82. Plaintiff is seeking damages for the medical debt of about 20k. Plaintiff is seeking damages for physical and emotion pain and suffering from the hostile work conditions, discrimination, and retaliation. Plaintiff is additionally seeking the loss of salary after being terminated.

before February 6, 2023 but elected not to do so because she believed that her working conditions would not change. Her testimony is consistent with the employer's letter to the claimant stating she could either return to work, request an extension of her leave, or the employer would terminate her. Because the employer provided a choice to the claimant, I conclude that the employer did not discharge the claimant. Accordingly, I conclude that she was not discharged for misconduct and not disqualified on that basis.

The credible evidence further establishes that the claimant knew that she would be terminated if she needed to return to work or request an extension of her leave on or before February 6, 2023, and that she did not do either. The claimant acknowledged that she received a letter informing her of those options and that she chose to be terminated rather than the alternatives. Based on these circumstances, because the employer reasonably requested the claimant take some action to preserve her employment, and she knowingly failed to do so, I conclude that her separation was voluntary.

The claimant further credibly testified that she did not return to work or request an extension because she believed that, if she did so, her working conditions would still be the same. The Board has held that a claimant has good cause to voluntarily separate from an employer where they are advised that it was medically necessary to do so (*see e.g.* Appeal Board No. 585708). The claimant credibly testified that she did not act because her doctor told her that the prolonged sitting at work was injuring her back and advised her to either change her working conditions or stop working at that position. While the claimant was medically cleared to return to work as of December 5, 2022, such that she could physically work as of that date, she credibly testified that her doctor told her that continuing under the same conditions placed her at high risk of reinjuring herself. The claimant further credibly testified that her doctor advised her that she should stop working for the employer if her conditions could not change. Based on these circumstances, including the claimant's several attempts to address her concerns with the employer, I conclude that the claimant attempted to preserve her employment. Accordingly, because of the risk of reinjury, I find that the claimant has demonstrated that it was medically necessary for her not to return to work and, accordingly, had good cause for her voluntary separation from the employer. As a result, I conclude that separated under non-disqualifying conditions.

DECISION: The claimant's application to reopen A.L.J. Case No. 023-04916 is granted.

The initial determinations, disqualifying the claimant from receiving benefits, effective February 7, 2023, on the basis that the claimant voluntarily separated from employment without good cause; and disqualifying the claimant from receiving benefits, effective February 7, 2023, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by MONTEFIORE MEDICAL CENTER prior to February 7, 2023 cannot be used toward the establishment of a claim for benefits, is overruled.

The claimant is allowed benefits with respect to the issues decided herein.

TO THE EMPLOYER:

YOU HAVE NOT APPEARED AT TWO SCHEDULED HEARINGS. ANY REQUEST FOR REOPENING MUST BE MADE TO THE APPEAL BOARD. A request to reopen must be made in writing and sent by fax to (518) 402-6208 or by mail to the Unemployment Insurance Appeal Board, PO Box 15126, Albany, NY 12212-5126. The request must include the case numbers that you are requesting to reopen and an explanation of the reason for the failure to appear at both hearings. Attach any documentation that supports your reason. You will be granted another hearing only if the Board determines, based upon its review of the case file, that your failure to appear or proceed at both prior hearings was for good cause or if in its discretion the Board orders another hearing to consider that question.

/s/ Alexander Slichko

**Administrative Law Judge**

**Acts of alleged discrimination: What did the person/company you are complaining against do? Check all that apply**

Demoted me
Denied me training
Paid me a lower salary than other co-workers doing the same job
Gave me different or worse job duties than other workers doing the same job
Denied my request for an accommodation for my disability, or pregnancy-related condition
Denied services or treated differently by a temp or employment agency
Other - Write In (Required): Im suppose to be truck driving instead Im stilling in the hallway hours on end & 2 weeks before taking a leave i had to be trained to do maintenance.

## Basis

**Basis of alleged discrimination in employment:**

**Race/Color** (because you are Asian, Black, White, etc.; includes ethnicity; includes traits historically associated with race such as hair texture or hairstyle)

**Please specify race/color:**

i believe im not from the "good old boys club"im the only woman in my field in 15years.When asked why is that i received no answer.

## You are filing a complaint against

**Entity that discriminated against you:**

**Name of entity**

Montefiore

**Street Address**

853 Longwood Ave

**City**

bronx

**State**

ny

**Zip**

10459

**In what county or borough did the violation take place?**

Bronx

**Phone Number**

7185884460 ext 2239

**Email address**

jpierson@montefiore.org

**Fax Number**

2127447633

**Company Website**

montefiore.org

**Please provide the name, last name, and title of individual people who discriminated against you.**

Joan Pierson HR department

Randy Rodriguez----Supervisor

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Charmaine Hibbert
128 Lorraine Avenue
Mount Vernon, NY 10553

EEOC Charge Number: 16GC300752
NYSDHR Case Number: 10221277

**NOTICE**

This office has been informed that you filed a complaint of employment discrimination with the New York State Division of Human Rights (NYSDHR). The purpose of this notice is to inform you of your federal rights pursuant to one or more of the statutes under which you may have filed. Please be advised that your complaint will be investigated by the New York State Division of Human Rights, not the Federal Equal Employment Opportunity Commission (EEOC). All questions, correspondence and status reports with regard to your case must be directed to the New York State Division of Human Rights office where your complaint was filed.

**YOUR FEDERAL RIGHTS** (if you filed under):

[X] Title VII of the Civil Rights Act of 1964, as amended – If you want to file a private lawsuit in federal district court with your own private attorney because you do not want the New York State Division of Human Rights to conduct an investigation, you may request from the EEOC a Notice of Right to Sue, 180 days after you have filed your complaint. Once the EEOC grants your request, it is only valid for ninety (90) days from the date the Notice was issued, after which your time to sue expires. If you want the New York State Division of Human Rights to conduct an investigation, you do not need to make this request, or to contact or write either agency. The New York State Division of Human Rights will contact you and/or advise you in the near future of their investigation and determination findings.

[ ] The Americans with Disabilities Act of 1990 (ADA) – Same as Title VII, above.

[ ] The Age Discrimination in Employment Act of 1967, as amended(ADEA) – If you want to file a private lawsuit with your own private attorney, you could do so any time after 60 days from the date you filed your complaint with the New York State Division of Human Rights. This is only if you do not want the New York State Division of Human Rights to conduct an investigation, otherwise you do not need to do anything at this time. The New York State Division of Human Rights will contact you and/or advise you in the near future of their investigation and determination findings.

Date: November 22, 2022

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

**EEOC REVIEW PROCEDURE**

If you want the EEOC to review the New York State Division of Human Rights final determination, because you are not satisfied with their final findings, you may request that the EEOC conduct a substantial weight review. This request must be done in writing to the EEOC and within fifteen (15) days from the date you received the New York State Division of Human Rights final determination. Otherwise, we will adopt the state findings.

You review request must specify the reason(s) why you do not agree with the New York State Division of Human Rights final determination.

Mail your request for substantial weight review to:

Equal Employment Opportunity Commission
Attn: State and Local Unit
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

This address is for review purposes only. Remember, if you have questions concerning the status of your case, you must contact the New York State Division of Human Rights.

Date: November 22, 2022

**9. Description of alleged discrimination**

***Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. TYPE OR PRINT CLEARLY.***

I was hired on Jan 24, 2022 to work as a motor vehicle operator. I am suppose to do my job description, I am suppose to work set hours daily. However my supervisor has limited experience in the field therefore not allowing me access to other co workers that he does not relate well with. I have asked him (Randy Rodriguez) in private and also with meetings with HR (Joan Person) to please give me things to do and was repeatedly told due to covid there is not much to do. I was not allowed bonuses and salary increase, when asked why I was told to ask my union. Before going on a temporary leave Sept 6, 2022 I was being trained to do maintenance. When asked why am I not doing what my job title is I was told I would have to start filling in when the other staff members go on vacation.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* ***DO NOT WRITE IN THE MARGINS OR ON THE BACK OF THIS FORM.***

## Signature (Declaration or Oath)

Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment). This complaint will protect my rights under federal law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice. (If you have another action pending and still wish to file, please contact our office to discuss.)
**PLEASE INITIAL** CH

Human Rights Law § 297.1 requires that a complaint filed with the Division of Human Rights must be "under oath or by declaration." **You must complete either the "declaration" or "oath" sections below.** The declaration requires only your signature and does not need to be notarized. The oath requires that you sign it before a notary.

### DECLARATION

I affirm this 14 day of November (month), 2022 (year) at bronx (city), NY (state), under penalties of perjury, that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and know the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believe the same to be true.

Charmaine Hibbert
[Complainant name]

### OATH

STATE OF NEW YORK )
COUNTY OF Westchester ) SS:

Charmaine Hibbert, being duly sworn, deposes and says: that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and knows the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believes the same to be true.

Charmaine Hibbert
Complainant signature

Subscribed and sworn to
before me this 14 day
of November 2022

Jenna Tamarazzo
Signature of Notary Public

JENNA TAMARAZZO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01TA6411392
Qualified in Westchester County
Commission Expires November 23, 2024

***Please note: Once this form is completed and returned to the New York State Division of Human Rights, it becomes a legal document and an official complaint with the Division.***

A one-party telephonic conference was conducted with the Complainant. The Complainant stated that she was a member of Union Local 1199. The Complainant stated that she was hired by Joan Pierson and Randy Rodriguez, who was her immediate supervisor. The Complainant stated that she passed probation but later she expressed dissatisfaction with her job as there was a lack of work. The Complainant expressed her concerns to Joan Pierson and Randy Rodriguez on four occasions between March 2022 and July 2022. The Complainant stated that she initiated the first meeting. The Complainant stated that she was driving a bus without a Commercial Driver's License (CDL), but the Complainant did not press to get a CDL. The Complainant stated that Ms. Pierson said to the Complainant that the Complainant should not quit the job and that Ms. Pierson said that she would see what the Complainant could do. The Complainant stated that she asked for light duty, but the Complainant would not be permitted to work in the medical areas because of concern for HIPAA matters. The Complainant stated that she went out on medical leave on September 9, 2022. The Complainant stated that she had been the only Driver who was not performing work allegedly because of COVID. The Complainant stated that she asked Mr. Rodriguez for different hours - if she could begin work between 10:00 AM and 11:00 AM, rather than 6:00 AM, but she was not allowed to do so. The Complainant stated that she damaged her back while sitting around waiting for work and that was why she had to go out on medical leave. The Complainant stated that Disability only paid her one check. The Complainant stated that she told her doctor that she had to go back to work and, at first, her doctor did not want the Complainant to go back to work, and later her doctor agreed to allow the Complainant to go back to work. The Complainant stated that she was running out of money. The Complainant stated that she saw her job description on line but did not get a hard copy of her job description. The Complainant stated that Joan Pierson and Randy Rodriguez did not want to address Housekeeping and Maintenance which they wanted the Complainant to do. The Complainant stated that there were five other drivers under Mr. Rodriguez's supervision and none of them were performing maintenance and housekeeping duties. The Complainant stated that she never received a copy of the Collective Bargaining Agreement, and she was supposed to get a 3% salary increase after one year of work. The Complainant stated that at an earlier time, she informed Carlos, the Head of Transportation, that she would like a transfer. The Complainant stated that she did not discuss a transfer with the Union until late September, early October with the Union, when she was out on medical leave. The Complainant stated that there was motor vehicle work at the East Bronx, and North Bronx locations, as well as under Carlos with the shuttle buses. The Complainant stated that Joan Pierson never told the Complainant that she must wait a year before she could get a transfer at the Respondent Hospital.

The Complainant stated that Joan Pierson had informed the Complainant in March 2022 she would talk to Randy Rodriguez, without over-stepping, that he would work on giving the Complainant assignments on a daily basis. The Complainant stated that those were Ms. Pierson's exact words. The Complainant stated that Ms. Pierson expressed, in several meetings (March and April 2022), "I know you're unhappy,please don't quit."

The Complainant stated that she made a suggestion to Ms. Pierson if the Complainant could clean the offices on the down time from driving. The Complainant stated that Ms. Pierson responded that due to HIPAA (law), the Complainant could not be around personal information of clients.

The Complainant only received her job description after the Union Local 1199 asked Ms. Pierson when there was a conference call in January 2023.

The Complainant stated that the Union Local 1199 representative, Pansey Llewelyn, stated at the conference call that in all the years that she had worked as a Union representative, she had never heard of a Truck Driver being asked to do housekeeping or maintenance. The Complainant stated that she had worked for the Respondent hospital for one year and she was not asked to perform housekeeping work, nor was she trained for it. The Complainant stated, however, that she trained for maintenance for two weeks prior to her sick leave.

The Complainant stated that she was told by Human Resources in January 2022 she would get an increase in salary after her probationary period. The Complainant stated she did not get that salary increase, as well as the 3% raise. The Complainant stated that she was not receiving her health insurance for several months, and that her correct social security number was not applied to her employment documents - and she addressed both issues to the Human Resources department.

The Complainant stated that in the beginning of 2022, she asked both Ms. Pierson and Mr. Rodriguez, in the third meeting held in April 2022, if she could be transferred to a different department because she was not happy. The Complainant stated that Ms. Pierson and Mr. Rodriguez told the Complainant that they would talk to Carlos, the manager of Motor Vehicle Transportation, and that Ms. Pierson would get back in touch with the Complainant.

The Complainant stated that almost one year later in a conference call with Ms. Pierson, Mr. Rodriguez, and two Union representatives (January 2023), Ms. Pierson shared with Mr. Rodriguez, the Complainant, and the two Union representatives that there was nothing in terms of transferring the Complainant as Carlos had nothing available. The Complainant stated that there were several attempts to convene an in-person or virtual meeting. The Complainant stated that there were phone calls, emails with the Complainant, the Union representatives. The Complainant stated that Ms. Pierson stated several times that the vacation time for Mr. Rodriguez made it not available to meet, and that the timing was also a conflict.

The Complainant stated that she asked Ms. Pierson and her Union representatives when she would return to work on December 5, 2022 if she would perform driving or maintenance, but she never received a response.

**Date of the most recent act of alleged discrimination**

11/01/2022

## Description of discrimination

**Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and other details. You must explain why you think these acts were discriminatory and how these acts are connected to the protected class (race, color, sex, disability, etc.) you selected previously.**

The first month of January i was anxious,and excited to start working at the Company that denied me work for eight years. While being interviewed i told the HR Joan Pierson that i applied for 8 yrs. Her response was not what i expected,she disregard my question and said i did not apply accurately. As time passed i asked my Supervisor for things to do, with minimum response. I had a meeting with HR letting her know of my displeasure she said she will talk to Randy and ask him why Im not doing what my job entails. My Supervisor then surprised me with a meeting that i was unaware of with Joan, then the both of them decided to tell me why there is not much work for me to do because of Covid was Joan exact words, i then asked why was I hired,Joan placed her hands in my face and got very defensive and said they will try to find me something to do,this meeting took place in the Summer of 2022.Joan asked me if Im happy at Montefiore I said NO also she asked me what i would like,i said a transfer,Joan suggested with Randy that she would call Carlos the person in charge of the Motor Vehicle department.That never happened.I then realized that there is nothing that they were willing to do to help me.I asked Randy why am i not allowed to assist co workers with the mobile unit and why do I have to get to work so early when there is nothing to do. Again very little response, i would pass Joan in the hallways she stopped asking how i am doing. I have noticed there a favorites and the ones that are white or Latinas get the most money and benefits and separate themselves from the dark skin workers. I was sitting in the hallway as usual when i told Muriel Vargas Randy Supervisor I cant do this anymore,she said she will make sure she trains him on how to do this job. I said how does a Computer tech get a Supervisor job and is expected to know what to give me for work on a daily basis. Her response was "please dont leave" we will fix it. This conversation was August 2022.
Finally to no avail my back starting to react to the long unnecessary sitting with the added stress i decided to go on leave,then realizing i had no insurance for several months and was forced to cancel my original insurance and my social security number was not accurate from day one.My Union is not strong enough to get a sit down meeting to find out what is going on at work.I felt I didnt have any other alternatives but to call the Division of Human Rights.

## Declaration

**Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.**

**I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice. (If you have another action pending and still wish to file, please contact our office to discuss.)**

**Please Initial:**

CH

**I affirm under penalties of perjury, that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and know the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believe the same to be true.**

Charmaine Hibbert

# Montefiore

| HUMAN RESOURCES POLICY AND PROCEDURE MANUAL | SUBJECT: Transfers and Promotions |
|---|---|
| APPROVED: | POLICY NUMBER: II-8 |
| | PAGES: 2 of 4 |
| | DATE ISSUED: 09/01/64 |
| DAVID BRODSKY | DATE REVIEWED/REVISED: 2/10/22 |

**TRANSFERS:**

Definition – A transfer is a job change that is not a promotion. There are two steps:

- Lateral Transfer: A transfer from one department to another that occurs within the same classification or pay grade.
- Demotion: A transfer to a lower graded position.

**ELIGIBILITY FOR TRANSFER AND PROMOTIONS:**

Lateral Transfer- Associates are eligible to apply for a transfer after completion of one (1) year of service in their present position, with the exception of item 5 above and exceptions listed in chart below. Part-time associates are eligible after completion of six (6) months of service in their present position. Part-time associates who have completed their probationary period can move to full-time vacancies within their department provided such movement will not unreasonably reduce the operational efficiency of that department.

Promotion – Associates are eligible to apply for promotion based on chart below.,

| Union | Lateral Transfer Rule | Promotion Rule |
|---|---|---|
| Local 1199 | After 1 year in current role | After successful completion of probation |
| NYSNA | After successful completion of probation | After successful completion of probation |
| 1199 RN (Wakefield) | After 6 months | After successful completion of probation |
| SSOBA | After 1 year in current role | After successful completion of probation |
| PTCNC | Part Time are eligible after successful completion of probation.<br>Full Time are eligible after 1 year | After successful completion of probation |
| Local 30 | After 1 year in current role | After successful completion of probation |
| Weiler PT | After 1 year in current role | After successful completion of probation |
| Non-Union | After 1 year in current role | After 1 year in current role |
| Management | After 1 year in current role | After 1 year in current role |

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/07/2023

**To:** Charmaine Hibbert
128 Lorraine Avenue
Mount Vernon, NY 10553

Charge No: 16G-2023-00752

EEOC Representative and email: TIMOTHY RIERA
Deputy Director
TIMOTHY.RIERA@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
08/07/2023

Timothy Riera
Acting District Director

**Cc: Montefiore Medical Center**
**Attn: Richard Tapia – Labor & Employment Counsel**
**3450 Wayne Avenue**
**Ground Floor**
**Bronx NY 10467**

Please retain this notice for your records.

The Complainant asserted that she asked her supervisor, Randy Rodriguez, for things to do, but there was minimum response from him. The Complainant had a meeting with Human Resources in which she let Ms. Pierson know of her displeasure with work, and Ms. Pierson said that she would talk to Mr. Rodriguez and ask him why the Complainant was not performing what the job entailed. The Complainant asserted that Mr. Rodriguez and Ms. Pierson had a surprise meeting during the summer of 2022 with the Complainant in which they told the Complainant why there was not much work for the Complainant, which was because of Covid. The Complainant asked why she was hired, and Ms. Pierson became very defensive but said they will try to find the Complainant something to do.

The Complainant asserted that Ms. Pierson asked the Complainant if she were happy at the Respondent, which the Complainant was not, Ms. Pierson asked the Complainant what she would like, and the Complainant responded that she would like a transfer. Ms. Pierson suggested with Mr. Rodriguez that she would call Carlos, who was in charge of the Motor Vehicle Department, but that never happened.

The Complainant asserted that she asked Mr. Rodriguez why she was not allowed to assist co-workers with the mobile unit, and why she had had to get to work early when there was nothing to do. There was little response from Mr. Rodriguez and when the Complainant would pass Ms. Pierson in the hallways, Ms. Pierson stopped asking how the Complainant was doing.

The Complainant asserted that there were favorites, and that they are white or Latinas who get the most money and benefits and separate themselves from the dark skin workers. The Complainant spoke to Muriel Vargas in August 2022 and asked her how a computer tech (Mr. Rodriguez) got a supervisor's job and then was expected to provide work for the Complainant on a daily basis. The Complainant asserted that Ms. Vargas said to the Complainant to please do not leave, and they will fix it.

The Complainant asserted that her back started to react to the long unnecessary sitting with the added stress, and she decided to go on leave. The Complainant realized that she had no insurance for several months and was forced to cancel her original insurance; the Complainant's social security number was not accurate from day one.

The Respondent denied that the Complainant was discriminated against. The Respondent averred that shortly after her three-month probationary period ended, the Complainant grew frustrated in her role and expressed her dissatisfaction with the lack of work she had. Joan Pierson, the Director of Human Resources, met with the Complainant multiple times to explain that the COVID-19 pandemic had shifted the way medical services were being provided (i.e., more telehealth) which resulted in fewer patients and staff needing to be transported to and from BHC clinic sites. The Respondent asserted that when the Complainant did not have work, she would sit at the health center located on Longwood Avenue, which was available to and utilized by all Respondent employees.

The Respondent asserted that Ms. Pierson suggested to the Complainant that she use some of this down time to apply for her commercial driver's license, which the Complainant had

expressed an interest in doing and which would allow the Complainant to operate the mobile medical and dental units. As the Complainant admitted, Ms. Pierson also encouraged the Complainant to apply for a transfer and promised to work with her and the union to make it happen.

The Respondent asserted that on September 9, 2022, the Complainant applied for and was granted a medical leave of absence. She was cleared to return to work by Occupational Health Services on December 5, 2022, but the Complainant never reported back to work. The Respondent asserted that on December 23, 2022, Ms. Pierson spoke with the Complainant and her union representatives. During the meeting, Ms. Pierson confirmed that the Complainant had received a copy of her job description as part of the orientation packet she provided to the Complainant. The Complainant also received another copy during her orientation with Randy Rodriguez, her supervisor, and she reviewed the responsibilities of the job with the Complainant and the union representatives. The Respondent asserted that there was a discussion of the possibility of allowing the Complainant to transfer even though she had not been employed with the Respondent for the required one year of employment, provided the union agreed. The Complainant, however, was loud and talked over both Ms. Pierson and the union representatives which made it difficult to engage in a productive dialogue.

The Respondent asserted that on January 11, 2023, Ms. Pierson met again with the Complainant and her Union representatives, and they went over the job description and discussed the option of a transfer. Ms. Pierson also reminded the Complainant that she had been cleared to return to work, and that she had to return to work or seek additional leave. The Respondent asserted that on January 27, 2023, Ms. Pierson wrote a letter to the Complainant advising her that she had been cleared to return work on December 5, 2022, and her absence since that time was unauthorized. The letter also stated that her unauthorized leave of absence "will be considered job abandonment, and [she] will be terminated and considered to have voluntarily resigned without notice" if she did not return to work by February 6, 2023. Also, if the Complainant required additional leave, she had to complete a leave of absence request form on or before February 6, 2023.

The Respondent asserted that on February 1, 2023, the Complainant sent Ms. Pierson an email stating that she would like to transfer. Ms. Pierson responded by sending the Complainant a letter via email, attaching a copy of the Respondent's policy regarding transfers, and advising the Complainant that irrespective of her desire to transfer, she either had to report to work on or before February 6, 2023, or request an extension of her leave of absence by February 6, 2023, using the Leave of Absence Request Form – again providing the forms as attachments.

The Respondent asserted that the Complainant responded to Ms. Pierson's email in which she stated, inter alia, for Ms. Pierson not to send any more emails. The Complainant did not return to work, nor did she request an extension of her leave of absence or a transfer. As a result, the Complainant was terminated effective February 7, 2023.

The Complainant failed to proffer evidence connecting her class membership to any action taken against her by the Respondent, and she was unable to provide any witnesses to corroborate his complaint. The investigation revealed that even if the Complainant was able to

refute the reasons offered by the Respondent for how she was treated, she would still be unable to connect race/color to the Respondent's actions.

The Complainant asserted that he was discriminated against because of her race/color. The Respondent denied that the Complainant was discriminated against because of her race/color. The investigation revealed that the Complainant had inquired about transferring from her unit because she was not working consistently as a Motor Vehicle Operator. The investigator further revealed that the Complainant was ineligible to obtain a transfer at the time of the filing of instant complaint as the Respondent policy was to permit transfers once an employee has completed one-year of employment with the hospital, and the Complainant had not completed one-year of employment at the time of filing. Moreover, the Complainant was unable to compare herself with other Motor Vehicle Operators who were of a different protected class and had worked for the Respondent for less than one-year and were able to transfer to a different department. It should be noted that the Respondent continues to employ two other Motor Vehicle Operators who are of the same protected class as the Complainant. The Complainant asserted that she was the lowest paid Motor Vehicle Operator, but it should be noted that the salaries would be commensurate with the provision of the Union's Collective Bargaining Agreement as well as length of service. The investigation revealed that the Complainant was the least senior Motor Vehicle Operator in her unit.

The Division notes that the Complainant's allegations impute a basis of sex discrimination. Though not identified as a basis for discrimination, such allegations were investigated and considered. The investigation revealed insufficient evidence that the Respondent discriminated against the Complainant because of her sex. The Complainant was hired by the Respondent with the knowledge that the Complainant was a female, and the Complainant was able to pass her probationary period, which would indicate that the Respondent did not possess an animus against the Complainant because of her race/color and sex. Moreover, the Complainant asserted that she was treated differently with regards to salary as she did not receive a 3% salary increase in January 2023 whereas the other Motor Vehicle Operators did. It should be noted, however, that the 3% salary increase occurred in January 2023, after the filing of the instant complaint.

The Complainant only made bare assertions that she was discriminated against on the basis of race and sex. The Complainant's mere belief and conclusory allegations that she was discriminated against because of her race or sex is insufficient to establish a nexus to the Respondent's actions.

The Respondent has articulated a legitimate, non-discriminatory reason for how the Complainant was treated which have not been proven to be a pretext for discrimination.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition <u>within sixty (60) days after service of this Determination</u>. A copy of this Notice and